## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## TERRE HAUTE DIVISION

| | |
|---|---|
| DONALD L. McMILLIN | ) |
| Plaintiff | ) ) ) |
| vs. | ) CASE NO. 2:19-cv-202 ) |
| INDIANA HOME CARE PLUS CO., INC. | ) ) |
| Defendant | ) |

### *PLAINTIFF'S COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF AND REQUEST FOR TRIAL BY JURY*

Plaintiff Donald L. McMillin (hereinafter "McMillin"), by his counsel, and for his cause of action against the Defendant Indiana Home Care Plus Co., Inc. (hereinafter "Indiana Home Care Plus"), states as follows:

### *I.  FACTUAL ALLEGATIONS*

1. McMillin is a resident of Seelyville, Vigo County, Indiana.

2. McMillin was employed by Indiana Home Care Plus as a home health aide from approximately August 2015 until the date he was suspended and ultimately terminated from employment, on or about September 25, 2018.  On September 28, 2018, Indiana Home Care Plus suspended McMillin from work and it refused to allow him to work, claiming McMillin must provide something in writing from a physician that either "released Mr. McMillin from his medical restrictions" or stated that McMillin "did not have any medical restrictions."

3. Mr. McMillin was not and has not been placed on any medical restrictions by a physician.  Moreover, McMillin was fully capable of performing all duties of his home health aide position and no need existed for Indiana Home Care Plus to make inquiries into McMillin's

1

health, his medical conditions or any medical treatment he received at the time of his termination.

4. Indiana Home Care Plus is a business headquartered in Greencastle, Putnam County, Indiana. Its primary shareholder/owner is Danise Baird. Indiana Home Care Plus provides in-home health care services. Most or all of its clients are military veterans who receive home health care benefits through the Veterans Administration. Indiana Home Care Plus has a contract with the Veterans Administration to provide home health care services to veterans. Most or all of the clients McMillin served in his capacity as an Indiana Home Care Plus employee were veterans in need of home health care services.

5. McMillin is a veteran himself. McMillin served in the U.S. Army from 1983 to 1991. He was honorably discharged. As a veteran, McMillin receives medical benefits through the Veterans Administration. He is receiving treatment at the VA Hospital in Danville, Illinois, including treatment for ongoing problems with his back.

6. Indiana Home Care Plus's owner, Danise Baird, learned that McMillin was attending doctor's appointments at the VA Hospital in Danville, Illinois. McMillin believes one of his patients called Indiana Home Care Plus on or about September 24, 2018 to report that McMillin declined to move furniture for him during a home health session. Heavy lifting and furniture removal are certainly not part of McMillin's home health care aide jobs, nor are such services part of the home health care provided to the patient through VA benefits. McMillin believes he either said to the patient that he was getting treatment for his back at the VA Hospital or displayed stiffness during the home visit.

7. Danise Baird spoke with McMillin by phone during the morning of September 25,

2018.  Ms. Baird let McMillin know that she was aware that McMillin was receiving medical treatment at the VA Hospital in Danville, Illinois.  Ms. Baird proceeded to demand that McMillin get a letter or something in writing from a physician that either "released Mr. McMillin from his medical restrictions" or stated that Mr. McMillin "did not have any medical restrictions."  McMillin explained that he was not under any type of medical restrictions.  Ms. Baird responded, telling McMillin "I need a letter from your doctor stating you are no longer on restrictions, and until I get that letter, you will not work."

8. Indiana Home Care Plus did not allow McMillin to work from that September 25th date she demanded he provided medical certification that he can work without any medical restrictions.  McMillin called Ms. Baird on multiple occasions asking permission to return to work and telling Ms. Baird his physician has not placed him on any medical restriction, but she refused to allow Mr. McMillin to work and, ultimately, terminated his employment.

9. McMillin has not taken the position that his medical conditions, including his back injuries, are actual disabilities under the Americans With Disabilities Act ("ADA"), but McMillin certainly has claims against Indiana Home Care for its violations of his rights under the ADA.  Plainly, Indiana Home Care Plus and its owner Danise Baird are discriminating against McMillin based upon a perception or belief that Mr. McMillin has a disability so serious that it prevents him from working at all.

10. Indiana Home Care Plus is violating McMillin's ADA rights by making unwarranted medical inquiries about whether or not McMillin has a disability or medical restrictions and demanding from him medical records or information.  The ADA provides that an employer "shall not require a medical examination and shall not make inquiries of an employee

as to whether such employee is an individual with a disability or as to the nature and severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *See Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221, 1230-31 (10th Cir.1997).

11.     Moreover, Indiana Home Care Plus's demand for medical records stating McMillin had no medical restrictions whatsoever was far too broad to meet the exception at 42 U.S.C. § 12112(d)(4)(A). An employer-mandated examination can only be permissible *if narrowly tailored to address specific job-related concerns.* McMillin's home health care aide position did not require strenuous physical exertion. There was no reason to demand that McMillin be medical restriction free.

12.     More importantly, Indiana Home Care Plus's demand that McMillin provide medical proof that he does not have any medical restrictions is a *per se* violation of the ADA. The ADA prohibits an employer from firing or refusing to consider an employee's work or return to work based upon permanent restrictions. Any policy that an employee return to work with "no permanent restrictions" or be "100% healed" constitutes a *per se* violation of the Americans with Disabilities Act (ADA) because it prevents individual assessment and necessarily operates to exclude disabled people that are qualified to work." *Steffen v. Donahoe*, 680 F.3d 738, 748 (7th Cir. 2012). Instead, if the employer genuinely had concern about McMillin's ability to perform a particular job based upon its concern about his back condition or any concern about potential medical restrictions, the ADA requires Indiana Home Care Plus to engage in the ADA's "flexible, interactive communication process" to determine if the employee (McMillin) can work with a reasonable accommodation. *Kauffman v. Petersen Health Care VII,*

4

*LLC*, 769 F.3d 958, 963 (7th Cir. 2014); 42 USC § 12112(b)(5)(A).  No reasonable accommodations were discussed or considered by Indiana Home Care Plus before it suspended and then terminated McMillen from employment.

13.     From the facts and context, it is obvious that Indiana Home Care Plus's illegal efforts to demand that McMillin provide records of medical restrictions that did not exist and subsequent records "releasing" him from these non-existent restrictions were an impossible task created solely for the purpose of justifying an unscrupulous employer's attempt to justify the termination of an employee with a medical problem.  Donald McMillin is the very type of employee this provision of the ADA - 42 U.S.C. § 12112(d)(4)(A)- was created to protect.

14.     At all times during his employment, McMillin did good work and met all of Indiana Home Care Plus's reasonable expectations.

15.     Indiana Home Care Plus fired McMillin because it perceived him to be disabled and also in violation of McMillin's rights and protections under the ADA.  McMillin was more than qualified to continue his own home health aide position with Indiana Home Care Plus.  He has a good work history.

16.     McMillin has been significantly harmed by Indiana Home Care Plus's unlawful and  discriminatory termination of his employment.  He is seeking all lost wages and benefits, all liquidated damages, all compensatory and punitive damages, including compensatory damages for mental and emotional stress and anguish, humiliation, loss of enjoyment of life, career damage, and all pecuniary damages.  McMillin is also seeking payment of all of his reasonable attorney's fees, costs and expenses.

## II.  JURISDICTION AND VENUE

17. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 as McMillin's claims under the ADA raise federal questions of law.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the unlawful conduct alleged herein was committed in the Southern District of Indiana. More specifically, this case is properly assigned to the Terre Haute Division of the U.S. District Court for the Southern District of Indiana because McMillin worked for Indiana Home Care Plus within the counties that comprise this division.

### III.  ADMINISTRATIVE PROCEDURES

19. McMillin has complied with all of the administrative procedures that are conditions precedent to the filing of this lawsuit. With respect to his claim under the Americans with Disabilities Act, McMillin received his Notice of Right to Sue from the Equal Employment Opportunity Commission, which was dated April 23, 2019.

### IV.  AMERICANS WITH DISABILITIES ACT AMENDMENTS OF 2008 CLAIMS

20. McMillin incorporates herein by reference paragraphs 1 through 19 above.

21. Indiana Home Care Plus knowingly and intentionally discriminated against McMillin in violation of the Americans with Disabilities Act Amendments Act of 2008.

22. Indiana Home Care Plus's violations of McMillin's ADA rights include, but are not limited to, the following:

    a. Failing to reasonably accommodate McMillin's perceived disabilities;

    b. Discriminatory termination of McMillin from employment based upon Indiana Home Care Plus's perception or treatment of McMillin as disabled in one or more major life activities, including lifting and working.

   c. Indiana Home Care Plus is violating McMillin's ADA rights by making unwarranted medical inquiries about whether or not McMillin has a disability or medical restrictions and demanding from him medical records or information. The ADA provides that an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature and severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *See Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221, 1230-31 (10th Cir.1997). Moreover, Indiana Home Care Plus's demand for medical records stating McMillin had no medical restrictions whatsoever was far too broad to meet the exception at 42 U.S.C. § 12112(d)(4)(A). An employer-mandated examination can only be permissible *if narrowly tailored to address specific job-related concerns.* McMillin's home health care aide position did not require strenuous physical exertion. There was no reason to demand that McMillin be medical restriction free.

   d. Indiana Home Care Plus's demand that McMillin provide medical proof that he does not have any medical restrictions is a *per se* violation of the ADA. The ADA prohibits an employer from firing or refusing to consider an employee's work or return to work based upon permanent restrictions. Any policy that an employee return to work with "no

permanent restrictions" or be "100% healed" constitutes a *per se* violation of the Americans with Disabilities Act (ADA) because it prevents individual assessment and necessarily operates to exclude disabled people that are qualified to work." *Steffen v. Donahoe*, 680 F.3d 738, 748 (7th Cir. 2012). Instead, if the employer genuinely had concern about McMillin's ability to perform a particular job based upon its concern about his back condition or any concern about potential medical restrictions, the ADA requires Indiana Home Care to engage in the ADA's "flexible, interactive communication process" to determine if the employee (McMillin) can work with a reasonable accommodation. *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d 958, 963 (7th Cir. 2014); 42 USC § 12112(b)(5)(A). No reasonable accommodations were discussed or considered by Indiana Home Care Plus.

23. Indiana Home Care Plus is an employer as defined under the ADA, with fifteen or more employees working for it at all times relevant to this cause of action.

24. Indiana Home Care Plus's decision to suspend and then terminate McMillin, along with its illegal medical inquiries and per se violations based upon insistence that McMillin prove he was "restriction free," violate the ADA's prohibition against disability discrimination in employment decisions.

25. McMillin is a qualified individual with a disability or perceived disability who is capable of performing all essential functions of his own job, home health care aide, with or without reasonable accommodation.

26. Indiana Home Care Plus terminated McMillin rather than engage with him in the interactive communication process required under the ADA.

27. Prior to his termination from employment, McMillin performed his job duties well and met Indiana Home Care Plus's reasonable expectations.

28. McMillin's disability and/or perceived disability improperly motivated Indiana Home Care Plus's decision to discharge him from employment. Such wrongful actions on the part of Indiana Home Care Plus violate Title I of the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a and the Americans With Disabilities Amendments Act of 2008.

29. Indiana Home Care Plus failed and refused to make reasonable accommodations to McMillin's known and/or perceived physical limitations, in violation of Title I of the Americans With Disabilities Act, 42 U.S.C. § 12112(b)(5)(A). The effect of Indiana Home Care Plus's conduct has been to deprive McMillin of equal employment opportunities and to deprive him of the same rights as are enjoyed by other citizens.

30. As a direct and proximate result of Indiana Home Care Plus's conduct, McMillin has sustained substantial economic losses, including past and future wage losses, and other economic benefits. McMillin has also sustained the loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, career damage, mental and emotional distress, discomfort, and loss of enjoyment of life, all to his detriment and damage in amounts not fully ascertained. McMillin is seeking all available compensatory damages against Indiana Home Care Plus for its violations of the ADA. Further, as described herein above, Indiana Home Care Plus acted oppressively, maliciously, fraudulently and outrageously toward

McMillin, with conscious disregard for McMillin's known rights and with the intention of causing unjust and cruel hardship to McMillin. In acting in a deliberate and intentional manner, Indiana Home Care Plus intended to and did injure and annoy McMillin. McMillin is seeking punitive damages against Indiana Home Care Plus for its violations of his rights and protections under the ADA.

31. As a result of Indiana Home Care Plus's discriminatory practices, McMillin has found it necessary to retain the services of an attorney and is therefore entitled to his reasonable attorney's fees, costs and expenses in this matter.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Donald L. McMillin respectfully requests that the Court enter judgment in his favor against his former employer, Defendants Indiana Home Care Plus Co., Inc., and award to him all available damages, including, but not limited to, the following:

1. All damages available under the ADA, including all back pay and benefits, all available compensatory and punitive damages, front pay and benefits, and payment of all reasonable attorney's fees, costs and expenses;

2. Costs;

3. Pre-judgment interest, if available; and

4. Any and all other relief just and proper in the premises.

                    Respectfully Submitted,

                    HASSLER KONDRAS MILLER LLP
                    100 Cherry St.
                    Terre Haute, Indiana 47807
                    (812) 232-9691

                                          By/s/Robert P. Kondras, Jr.
                                             Robert P. Kondras, Jr.
                                             Attorney No. 18038-84
                                             Attorney for Plaintiff
                                             kondras@hkmlawfirm.com

### *REQUEST FOR TRIAL BY JURY*

Comes now the Plaintiff Donald L. McMillin, by counsel, and requests a trial by jury on all issues which may be tried to a jury.

                                          Respectfully submitted,

                                          HASSLER KONDRAS MILLER LLP

                                          By  /s/Robert P. Kondras, Jr.
                                               Robert P. Kondras, Jr.